**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**LINDSAY M.,**[1]

        Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

        Defendant.

Case No. 6:19-CV-1623-IM

**OPINION AND ORDER**

Ari D. Halpern, Halpern Law Group, PC, 62910 OB Riley Rd, Suite 100, Bend, OR 97703.
Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Joseph John Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL
COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA
98104. Attorneys for Defendant.

**IMMERGUT, Judge**

      Plaintiff, Lindsay M., seeks review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

and Title XVI, Supplemental Security Income ("SSI"). For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born on August 4, 1981, and has completed three and a half years of college. AR 89, 253. Plaintiff previously filed applications for DIB and SSI on February 25, 2015, and April 13, 2015, alleging disability beginning on April 1, 2009. AR 128. These applications were denied on July 10, 2015, and not further appealed. *Id.* Plaintiff protectively filed her current application for DIB and SSI on October 6, 2015, again alleging disability beginning on April 1, 2009. AR 253–56; 257–63. On July 18, 2018, Plaintiff amended her alleged disability onset date to September 23, 2012. AR 59.

In her application, Plaintiff alleged disability due to bipolar disorder, panic disorder, anxiety, depression, agoraphobia, schizoaffective disorder, attention deficit disorder, and PTSD. AR 287. On September 18, 2018, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled under the Social Security Act. AR 56. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–4.

### B.  The Sequential Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. AR 61.

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2012, her alleged onset date. *Id.*

At step two, the ALJ found the following severe impairments: morbid obesity, aggravating gastroesophageal reflux disease, asthma, and a mental impairment diagnosed to include bipolar disorder, borderline personality disorder, anxiety disorder, and panic disorder. AR 61–62.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. AR 62. Instead, the ALJ found that Plaintiff had the

residual functional capacity (RFC) to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk six hours out of an eight hour workday; can sit six hours out of an eight hour workday; can push and/or pull including operation of hand and foot controls within the lifting and carrying restrictions of light work; can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can frequently balance; can occasionally stoop, kneel, crouch; can never crawl; can never work in the presence of unprotected heights or hazardous machinery; should not be required to operate a motor vehicle as part of the job duties; can never work in the presence of concentrated exposure to dusts, fumes, or pulmonary irritants; should never work in the presence of concentrated exposure to extreme cold or extreme heat; is limited performing simple and routine tasks and can use judgment for that type of work; she can deal with changes in a work setting required for simple work; and she should never work with the public." AR 64.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 68. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience and RFC. AR 69. The ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.* These jobs included Packer (DOT 920.687-166), Assembler (DOT 701.687-010), and Inspector (DOT 727.687-066). AR 70. As a result, the ALJ found Plaintiff not disabled. *Id.*

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that she was not disabled. Plaintiff first argues that by alleging an onset of disability inside the timeframe adjudicated by her previously rejected applications, she has de facto reopened those prior applications. She then argues that the ALJ erred in making the determination that she was not disabled by: (1)

incorrectly finding that Plaintiff's impairments do not meet or equal Listings 12.04, 12.06, and 12.08 at step three; (2) improperly rejecting medical opinion evidence from Dr. Angelina Montoya; (3) improperly rejecting opinion evidence from Marta Richards, LPC, and Tracey McDonald, NP; (4) failing to provide reasons for rejecting the opinions of state agency physicians; (5) failing to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony; (6) failing to provide specific, germane reasons for rejecting Plaintiff's husband's testimony; and (7) failing to include all of Plaintiff's limitations in the RFC and hypothetical questions. Each argument will be addressed in turn.

## A.   De Facto Reopening of Prior Applications

Plaintiff begins by arguing that because her current applications allege an onset of disability in the period adjudicated by her prior applications, her new claim must be treated as an implied request to reopen her prior applications. ECF 14 at 5, 16–17. However, because this Court finds that none of her challenges discussed below are meritorious, it need not address whether Plaintiff's prior cases were reopened by her current case.

## B.   Evaluation at Step Three

At step three, the ALJ must determine whether a claimant's severe impairment "meet[s] or equal[s]" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Plaintiff argues that the ALJ's step three finding that Plaintiff's impairments did not meet or equal Listings 12.04, 12.06, and 12.08 was not supported by substantial evidence or based on correct legal standards. ECF 14 at 17–26.

### 1. Legal Standards

The impairments described in the Listings are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant who has an impairment that meets the criteria of a Listing demonstrates a higher level of severity in that impairment and is precluded from performing any gainful activity, not just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The Listings describe "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A mere diagnosis is insufficient to meet or equal a listed impairment. 20 C.F.R. § 404.1525(c). Rather, to meet a listed impairment, a claimant must "show that [her] impairment . . . meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original). The Listings put forth "strict standards because they automatically end the five-step inquiry before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The claimant bears the burden of proving her impairments meet or equal a Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

### 2. Analysis

The ALJ's finding that Plaintiff's impairments did not meet or equal Listings 12.04, 12.06, or 12.08 was based on correct legal standards and was supported by substantial evidence. To satisfy Listings 12.04 or 12.06, a claimant must meet Criteria A and B, or Criteria A and C in those listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2) (effective Mar. 14, 2018). To

satisfy Listing 12.08, a claimant must meet Criteria A and B of that listing. *Id*. Plaintiff argues that the ALJ misevaluated Criteria B for Listings 12.04, 12.06, and 12.08. ECF 14 at 17–25.

Under Criteria B for Listings 12.04, 12.06, and 12.08, the ALJ must rate the degree of severity of a claimant's limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). To establish the B Criteria, the claimant must prove she had an "extreme" limitation in at least one of these four areas, or "marked" limitations in at least two of these areas. *Id*.; *accord* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.08(B).

The ALJ's finding that Plaintiff had only a mild limitation in the functional area of understanding, remembering, or applying information was supported by substantial evidence. The ALJ acknowledged evidence in the record that suggested Plaintiff at times exhibited impaired memory and a lack of comprehension skills. AR 63. However, the ALJ also cited to numerous instances in the record where Plaintiff was noted to have intact recent and remote memory and was assessed to be of average intelligence. *Id*. (citing AR 366, 397, 539, 557, 560, 607, 618, 623, 631, 789, 791, 1105–06, 1131, 1135–36, 1138, 1173, 1214, 1217, 1221, 1225, 1246). The ALJ reasonably concluded that, on balance, Plaintiff was shown to have intact overall cognition and only a mild limitation in this area of functioning. *Id*.

The ALJ's finding that Plaintiff demonstrated moderate limitations, rather than marked or extreme ones, in the functional area of interacting with others was also supported by substantial evidence. The ALJ noted that Plaintiff lacked some communication skills, reported that she no longer had friends due to her anxiety, experienced panic attacks, and exhibited monotone speech. AR 63. The ALJ balanced these reported limitations with cites to the record where Plaintiff was

found to be cooperative, calm, rational, and reasonable. *Id*. The ALJ further pointed to parts of the record showing that Plaintiff exhibited fair eye contact and speech that was clear, coherent, and appropriate. Balancing the evidence, the ALJ reasonably assessed that Plaintiff had moderate limitations in the functional area of interacting with others. *Id*.

Similarly, the ALJ reasonably balanced the evidence in the record for the remaining two functional areas to find that Plaintiff also exhibited moderate limitations in those areas. With regard to concentrating, persisting or maintaining pace, the ALJ considered Plaintiff's reports that she could only concentrate for a few minutes and weighed it against reports in the record that Plaintiff demonstrated linear and goal-directed thought processing, had intact overall cognition, was alert, and had intact attention and concentration. AR 63. The ALJ reasonably balanced the competing evidence to find that Plaintiff demonstrated a moderate limitation in concentrating, persisting, or maintaining pace. When assessing Plaintiff's ability to adapt or manage herself, the ALJ again reasonably weighed evidence of the limitations Plaintiff experienced as a result of her anxiety and depression against record evidence suggesting that she was capable of maintaining fair grooming and hygiene as well as linear and goal-directed thinking. *Id*.

In arguing that the ALJ's Criteria B findings were not supported by substantial evidence, Plaintiff presents an alternative interpretation of the record. ECF 14 at 19–24. In making this argument, Plaintiff relies on her own subjective symptom testimony as well as the opinions of Dr. Angelina Montoya, Marta Richards, and Tracey McDonald. *Id*. However, as discussed further below, the ALJ properly discounted these opinions for valid reasons. Where testimony and opinion evidence has been properly considered and discounted by the ALJ, a claimant

cannot successfully rely on such evidence to undercut the ALJ's factual findings. *See Ford v. Saul*, 950 F.3d 1141, 1156–57 (9th Cir. 2020).

Plaintiff further argues that the ALJ failed to apply the correct legal standard in her Criteria B findings. ECF 14 at 19–24. However, rather than identifying an applicable legal standard that the ALJ failed to apply, Plaintiff supports this argument by disagreeing with the ALJ's assessment of what the evidence showed regarding her functional limitations. *See id*. As discussed above, the ALJ's assessment of Plaintiff's functional limitations is supported by substantial evidence and this Court cannot substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193, 1196.

Finally, Plaintiff argues that even if her mental impairments did not technically meet Criteria B, the ALJ failed to sufficiently explain why Plaintiff's impairments did not medically equal Listings 12.04, 12.06, and 12.08. ECF 14 at 25. Plaintiff cites the distinguishable case *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) to support this argument. *Id*. In *Marcia*, the claimant specifically presented evidence to the ALJ in an attempt to prove that his impairments equaled a listing. Here, Plaintiff made no such effort. This case is more like *Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020), where the Ninth Circuit explained that because the claimant failed to "present evidence in an effort to establish equivalence" to a listing, "the ALJ did not have an obligation to discuss medical equivalency sua sponte." Because Plaintiff did not develop and argue medical equivalency to a listing, the ALJ did not err by not raising and considering it sua sponte.

Therefore, substantial evidence supports the ALJ's step three finding that Plaintiff's impairments did not meet or equal Listings 12.04, 12.06, and 12.08.

### C.  Evaluation of Medical and Other Opinion Evidence[2]

#### 1.  Legal Standards

An ALJ must consider, evaluate, and explain the weight given to the opinions of medical professionals and others who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 06-03p, *available at* 2006 WL 2329939. Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Angelina Montoya, Marta Richards, Tracey McDonald, and state agency physicians. ECF 14 at 26–32, 36–38.

The Ninth Circuit distinguishes between three types of medical opinions: those from treating sources, examining sources, and non-examining sources. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830. A treating physician's report that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide only "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can comply with this mandate by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective

---

[2] Newly promulgated regulations changed how an ALJ must weigh medical opinion evidence for claims filed after March 27, 2017. Revisions to Rules the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on October 6, 2015, the new regulations do not apply to her case.

complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040.

### 2. Analysis

#### a. Angelina Montoya, M.D. – Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Montoya, Plaintiff's treating psychiatrist. ECF 14 at 26–29. Dr. Montoya opined that Plaintiff had the most severe limitations in every functional area, including memory, understanding, concentrating, adapting, and interacting with others. AR 1280–82. Because Dr. Montoya offered opinions that were more severe than the opinions of Dr. Ju and Dr. Kessler, the state agency physicians, the ALJ could properly discount Dr. Montoya's opinion by offering specific, legitimate reasons. AR 67–68; *Ford*, 950 F.3d at 1154. Here, the ALJ gave two specific, legitimate reasons for discounting Dr. Montoya's opinion: (1) it was not connected with specific medical support in the record; and (2) it was contradicted by the overall medical record. AR 67–68.

First, the ALJ found that Dr. Montoya's extreme opinions were unconnected to specific evidence in the record. *Id.* An ALJ may properly discount an opinion for this reason. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (an ALJ need not accept an opinion that is "brief, conclusory, and inadequately supported by clinical findings"). Given the severity of limitations Dr. Montoya attributed to Plaintiff, it was reasonable for the ALJ to expect them to be supported by clinical findings. Instead, Dr. Montoya's opinion was presented in the form of a checklist with the most severe box in every category checked off. AR 1280–82. Thus, the ALJ provided a specific, legitimate reason for discounting Dr. Montoya's opinion by pointing to the lack of support in the record.

Second, the ALJ found that Dr. Montoya's opinion was inconsistent with the record as a whole. AR 68. Where an opinion conflicts with the record as a whole, an ALJ may discount it. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), 416.927(c)(4); *Ford*, 950 F.3d at 1154–55. For example, Dr. Montoya predicted that Plaintiff would have serious problems remembering work procedures, concentrating, making simple decisions, and setting realistic goals. AR 1280–82. This was contradicted by various medical records which showed Plaintiff had intact cognition and memory, could concentrate, demonstrated normal thought processes, acted alert, spoke clearly, and acted cooperatively. AR 366, 397, 539, 557, 560, 607, 618, 623, 631, 664, 789, 791, 870, 1105–06, 1131, 1134–36, 1138–39, 1142–43, 1173, 1177, 1183, 1214, 1217, 1221, 1225, 1246. In fact, when Dr. Montoya evaluated Plaintiff during the summer of 2016, Plaintiff exhibited good judgment, displayed no thought disorder, acted cooperatively, spoke normally, and seemed to have average intelligence. AR 1246. These contradictions in the record provided the ALJ another specific, legitimate reason to discount Dr. Montoya's assessment.

Plaintiff argues that if the ALJ had concerns about how Dr. Montoya formed her conclusions she was obligated to further develop the record. ECF 14 at 28. Plaintiff's argument misunderstands the ALJ's obligations. An ALJs duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, Dr. Montoya's opinion was not ambiguous. Rather, it lacked support and conflicted with the record. Under agency regulations and governing precedent, it was reasonable for the ALJ to discount the opinion for these reasons. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4); *Ford*, 950 F.3d at 1154.

Plaintiff also contends that the ALJ failed to consider factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c). ECF 14 at 27–28, 30. However, in reaching her conclusion, the ALJ explicitly stated that she "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." AR 64. The ALJ then highlighted how, despite Dr. Montoya's treatment relationship with Plaintiff, her opinion ultimately lacked support and conflicted with the overall record, which are relevant factors under those regulations. AR 67–68; *see* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).

Next, Plaintiff argues that the ALJ misinterpreted the medical records. ECF 14 at 29, 31. However, the mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). To overturn an ALJ's fact-finding, it is not enough that the record "*supports*" a contrary conclusion, it must "*compel[ ]*" it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (emphasis in original). While Plaintiff disagrees with the ALJ's analysis, the findings were reasonable and this Court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193, 1196.

Finally, Plaintiff points to a supplemental statement written by Dr. Montoya following the ALJ's September 18, 2018 decision. In the statement, dated November 21, 2018, Dr. Montoya explains the nature of her clinical relationship with Plaintiff based on her "understanding that one of the reasons that [her] opinion was given little weight was due to the 'limited scope of the treatment relationship.'" ECF 14 at 9. Dr. Montoya writes that she sees Plaintiff once every three months with occasional contact via phone calls and texts between visits. *Id*. Dr. Montoya proceeds to outline limitations that Plaintiff and her husband have reported during visits, which largely overlapped with the testimony they offered to the ALJ at

their respective hearings. *Id*. Dr. Montoya concludes the letter by offering her opinion that "at this time, [Plaintiff] is psychologically, socially and industrially disabled." *Id*. While this supplemental statement may offer a more complete picture of Dr. Montoya's relationship with Plaintiff, it does not negate the ALJ's findings that Dr. Montoya's opinion was unsupported by clinical evidence in the record and that it conflicted with the record as a whole. Further, as noted by the Appeals Council, the supplement was written two months after the ALJ decided Plaintiff's case. Thus, Dr. Montoya's November 21, 2018 opinion that Plaintiff was disabled "at this time" was not relevant to the ALJ's determination of whether Plaintiff was disabled on or before September 18, 2018. AR 2.

Thus, the ALJ offered specific, legitimate reasons for discounting Dr. Montoya's opinion and substantial evidence supports the finding.

### b. Marta Richards, LPC, and Tracey McDonald, NP

Plaintiff further challenges the ALJ's decision to afford "little weight" to the opinions of Marta Richards, LPC, and Tracey McDonald, NP. ECF 14 at 30–32. "[O]nly licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted). Here, Plaintiff acknowledges that LPC Richards and NP McDonald are considered an "other source" under the relevant regulations and that the germane reasons standard applies. *See* ECF 14 at 30.

The ALJ provided germane reasons for the weight given to LPC Richards and NP McDonald's opinions. First, the ALJ noted that their opinions were based on "their treatment relationship with [Plaintiff]," which was of "limited scope." AR 68. In assessing the opinions of

"other" medical sources, ALJ's are required to consider the length of the treatment relationship and the frequency of treatment. 20 C.F.R. § 404.1527(f). The fact that LPC Richards and NP McDonald's treatment relationship with Plaintiff was one of relatively limited scope provided the ALJ with a germane reason to give their opinions limited weight. Second, the ALJ noted that the intensity of the limitations described by LPC Richards and NP McDonald were inconsistent with the record as a whole. AR 68. As noted above, where an opinion conflicts with the record as a whole, an ALJ may discount it. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), 416.927(c)(4); *Ford*, 950 F.3d at 1154–55. By pointing to this inconsistency, the ALJ provided a second germane reason for giving little weight to the opinions of LPC Richards and NP McDonald.

### c. Winifred Ju, PhD, and Ben Kessler, PsyD

Plaintiff also contends that the ALJ failed to give any reasons for her decision to give the opinions of state agency reviewing physicians Dr. Winifred Ju and Dr. Ben Kessler "little weight." ECF 14 at 36–38. Drs. Ju and Kessler did not examine Plaintiff but concluded that she was limited to one-to-two-step tasks with occasional public contact after reviewing her medical records in 2016. AR 135–36, 148–49, 173–75. Dr. Ju also concluded that Plaintiff's substance use was material to her case. AR 134.[3]

As explained above, an ALJ may properly discount evidence that conflicts with the overall medical record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Further, an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). While the ALJ limited Plaintiff to simple work without public contact, she did not adopt the doctors' opinions that Plaintiff was

---

[3] The law precludes a claimant from receiving benefits if her substance abuse was "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

limited to one-to-two-step tasks, or Dr. Ju's opinion that Plaintiff's substance use was material to her case. AR 64, 67. Consistent with Social Security regulations and *Sousa*, the ALJ cited medical evidence to support her findings. Multiple medical records showed Plaintiff had intact cognition and memory, concentrated, demonstrated normal thought processes, acted alert, spoke clearly, and acted cooperatively. AR 366, 397, 539, 557, 560, 607, 618, 623, 631, 664, 789, 791, 870, 1105–06, 1131, 1134–36, 1138–39, 1142–43, 1146–48, 1173, 1177, 1183, 1214, 1217, 1221, 1225, 1246. The ALJ reasonably concluded that these records showed that Plaintiff retained the residual functional capacity to perform a range of simple work, with limited social interaction.

Plaintiff argues that the ALJ failed to provide any reasons for discounting the opinions of Drs. Ju and Kessler. ECF 14 at 37. To the contrary, the ALJ dedicated a full paragraph in her decision to explaining why the opinions of Drs. Ju and Kessler were not as persuasive as other medical evidence in the record. AR 67.

Plaintiff further argues that the ALJ inaccurately summarized Dr. Kessler's opinion because the ALJ wrote that Dr. Kessler found Plaintiff capable of simple work while Dr. Kessler actually found Plaintiff could perform one-to-two-step tasks. ECF 14 at 37. Even if this was error, it is inconsequential. The ALJ noted Dr. Ju's opinion that Plaintiff was limited to one-to-two-step tasks and cited medical evidence showing that she could engage in simple work. AR 67. That same evidence also undermined Dr. Kessler's opinion. Because the ALJ's misstatement was harmless, it is not grounds for this Court to disturb the ALJ's ultimate finding. *Molina*, 674 F.3d at 1115.

Thus, substantial evidence supports the ALJ's decision to afford little weight to the opinions of Drs. Ju and Kessler.

**D.  Evaluation of Plaintiff's Subjective Symptom Allegations**

Plaintiff claims the ALJ erred by failing to give specific, clear, and convincing reasons for her decision to discount Plaintiff's subjective symptom testimony. ECF 14 at 32–34. This Court disagrees.

**1. Legal Standards**

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 65. In applying the second step of the required analysis, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

To justify the rejection of Plaintiff's subjective testimony, the ALJ cited specific medical evidence that conflicted with Plaintiff's claims. AR 65–66. "Contradiction with the medical evidence is a sufficient basis for rejecting the claimant's subjective complaints." *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008). For example, Plaintiff claimed she experienced daily panic attacks, had no ability to engage in cognitive thinking, and could pay attention for just a couple of minutes. AR 115, 117–18, 196, 301. In contrast to those allegations, the ALJ noted that medical records showed that Plaintiff's "thought process was linear and goal directed," and she "was noted to have a normal mood and respond appropriately to commands." AR 66. Further, Plaintiff said she felt fatigued during the day, had breathing problems, "[p]retty much" laid in bed all day, napped for two hours a day, and could walk only half a block at once, depending on the circumstances. AR 100–01, 111, 301. Yet the ALJ noted that in the medical

records Plaintiff was "routinely described [as having] a normal rate and effort of breathing, chest imaging did not show active or acute cardiopulmonary disease, her gate was often noted to be normal, she had normal extremity range of motion, and she had normal muscle strength and tone." AR 65. These discrepancies highlighted in the ALJ's discussion of the record evidence undermine Plaintiff's subjective complaints and provided the ALJ a valid basis to discount them.

Plaintiff argues that the ALJ's rejection of her testimony was "conclusory" and "never went on to provide" sufficient reasoning for discrediting Plaintiff's subjective complaints. ECF 14 at 33. However, this Court must affirm the ALJ's findings where "the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (internal quotation marks omitted). Plaintiff supports her argument with cites to *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995) and *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 1995). ECF 14 at 33. However, unlike in *Lester* and *Brown-Hunter*, the ALJ here described Plaintiff's subjective complaints and then narrowed in on specific medical findings in the record – both physical and mental – that undercut Plaintiff's assertions about her limitations. AR 65–67. The analysis was sufficient and supported by substantial evidence.

## E.  Evaluation of Plaintiff's Husband's Lay Witness Statements

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of her husband, Stephen M. ECF 14 at 34–36. ALJ's are required to consider statements from lay witnesses and must offer germane reasons for discounting such statements. *Molina*, 764 F.3d at 1111. Stephen M. completed two reports about his wife's impairments. AR 312–19, 354. He described limitations largely similarly to those Plaintiff herself alleged. For example, Stephen M. said she had debilitating anxiety, experienced panic attacks, took naps, had problems

concentrating and remembering things, and could walk only half a block at once. AR 312–19, 354.

The ALJ gave no weight to Stephen M.'s statements. AR 68. The ALJ noted that, like Plaintiff's complaints, Stephen M.'s statements conflicted with the medical evidence. *Id*. Contrary to the extreme mental limitations he described, medical records showed that Plaintiff had intact cognition and memory, could concentrate, showed normal thought processes, acted alter, spoke clearly, and acted cooperatively. AR 366, 397, 539, 557, 560, 607, 618, 623, 631, 664, 789, 791, 870, 1105-06, 1131, 1134-36, 1138-39, 1142-43, 1146-48, 1173, 1177, 1183, 1214, 1217, 1221, 1225, 1246. By highlighting these inconsistencies, the ALJ offered a germane reason to reject Stephen M.'s statements.

Plaintiff argues that the ALJ simply made a "boilerplate" reference to the medical evidence. ECF 14 at 31–32. To the contrary, the ALK cited numerous medical records throughout her decision that demonstrated that Plaintiff retained a higher level of functioning than reported by Stephen M. AR 65–67. Thus, the ALJ provided a germane reason for rejecting Stephen M.'s statement.

**F.  The ALJ's RFC and hypothetical questions**

Finally, Plaintiff argues that the ALJ erred by failing "to include limitations established by the state agency physicians; Dr. Montoya; Marta Richards, LPC; Tracey McDonald, NP; [Plaintiff's] own improperly rejected testimony; and the improperly rejected lay witness testimony" in the RFC findings and vocational hypotheticals. Therefore, Plaintiff argues, the VE's testimony based on the ALJ's hypotheticals "has no evidentiary value." ECF 14 at 39. As explained throughout the opinion above, the ALJ properly discounted portions of medical and lay testimony based on the proper legal standards. Thus, this argument fails.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 5th day of January, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge